## UNITED STATES DISTRICT COURT
## FOR
## THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| MAE ALICE BAKER, | ) |
| Plaintiff, | )   No._____ |
| vs | )   Judge _____ |
| | ) |
| THE UNITED STATES, | ) |

### COMPLAINT

Comes now Mae Alice Baker, Plaintiff in the above-styled action, and files this her complaint as follows:

### JURISDICTION AND VENUE

Jurisdiction and Venue are proper in this Court under 28 USC 1331.

### FACTS

Under law, directives of the Secretary of the Army, and the facts of this case, the final decision of the ABCMR to not change the status of Sgt. Baker was unsupported by substantial evidence, is arbitrary, an abuse of discretion, capricious, contrary to law or mandatory procedures, and is an injustice, as shown below.

On September 2, 1967, Gary Lee Baker and Mae Alice Baker were married. They never divorced or separated. They had two children.

PAGE 1

On March 20th, 1968, Gary Lee Baker (hereinafter referred to as Sgt. Baker) joined the United States Army.

Baker served in the Army for almost twenty-one years. During that period of service, in November of 1968, Baker received one non-judicial punishment for use of a provoking gesture toward another person serving in the army. This was the only disciplinary action ever taken against Baker during his army career.

Baker was never absent or late reporting for his assigned duties during his career.

Sgt. Baker received numerous commendations from his superiors during his service. He also held a security clearance.

There were numerous affidavits given by people, both family, friends, and fellow service members, who knew Baker. The affiants stated that Baker loved the army and never gave any hint that he would desert or leave the army. (See twelve page attached ruling by the ABCMR, dated April 27, 2021, AR20170011425, Baker (deceased), Gary Lee, for a list of affidavits.)

One of the affidavits was given by a registered nurse, who, after examining Bakers medical records, stated that Baker's uncontrollable blood pressure made him a prime candidate for a stroke or heart attack.

The ABCMR has provided no opposing affidavits.

On December 9, 1988, while stationed at Ft. Lee, Virginia, Sgt. Baker left home for Ft. Lee and was thus on duty. He did not arrive on base and has not been seen since.

One day later, on December 10, 1988, Sgt. Baker was administratively listed as AWOL, and on January 9, 1989, thirty days later, he was DFR (dropped from roles) and administratively listed as a Deserter.

The actions of the Commander of SSgt Baker and the ABCMR in charging Baker administratively were arbitrary, capricious, unsupported by evidence and is contrary to law for the following reasons:

1.

THE ARMY ADMINISTRATIVELY AND IMPROPERLY CHARGED SSGT. BAKER WITH AWOL AND DESERTION, BASED UPON A THREAT OF SUICIDE GIVEN TO HIS WIFE, AND CONCLUSIONS OF HIS COMMANDER WHICH ALLEGED MARITAL STRIFE, MENTAL DISORDER AND MENTAL INSTABILITY.

The Army Commander of SSgt. Baker stated the reasons for the administrative charges were a) because Baker had threatened suicide to his wife, b) and "Possible reasons for the AWOL and Desertion was "marital strife and mental disorder with mental instability."  (See attached Letter from the ABCMR dated April 27, 2021.

There is no evidence of suicide or attempt to commit suicide.

PAGE 3

Had there been, the rules of the Army show clearly that the Commander's reasons cannot be used against Baker.

No line of duty investigation, informal or formal, was ever done, although the Army had thirty days in which to do the required LOD investigation before declaring Sgt. Baker AWOL or as a Deserter.

LOD investigations must be done as follows: In the event of suicide or attemp,an investigation must be formal and immediate, directed by the unit commander.

A medical expert is required to investigate and give rulings and opinions. No Line of Duty investigation was ever done.   No medical expert ever investigated or gave rulings or opinions.

Sgt. Baker has never been heard from since December of 1988, by his family, friends, or the United States Army. Even after years of searching, he has never been located by the FBI or the United States Army. His social security number has never been used.

On May 5, 2017, Mae Alice Baker (hereinafter referred to as Plaintiff) filed  an application to the ABCMR to remove an administrative ruling of desertion from the record, and to allow her proper benefits, such as insurance and back pay.

Approximately four years later, despite numerous requests by Plaintiff for a ruling, the ABCMR finally issued a ruling, dated April 27, 2021. The Board ruled unanimously in favor of Plaintiff. (ABCMR ruling), which was signed by Barbara Stansbury, board member. That decision was then reversed by Alex Conyers, Deputy

Secretary of Defense. The Deputy Secretary of Defense gave no reasons for reversing the Board, as required by 32 CFR Section 581.3-Army Board for Correction of Military Records. Mr. Conyers stated simply that he had reviewed the decision of the board and found there was misconduct and intent to remain away permanently.

Neither the Military nor Mr. Conyers showed misconduct or intent to remain away permanently.

All evidence submitted to the Army by Plaintiff and the evidence used by the Army is shown in the accompanying decision of the ABCMR from the army to Plaintiff, said letter dated April 27, 2021. The evidence used by the army is shown as follows:

The Army based its case against Sgt. Baker on an alleged threat of suicide. The Army has not stated anywhere that Sgt. Baker committed suicide or attempted to do so, but their charge of mental disorder with mental disability is referring to suicide or attempt because of the statement from Sgt. Baker to his wife that he ought to kill himself".

If the Army believed Sgt. Baker committed suicide, or attempted to do so, they have violated numerous directives and procedures.

The Army did not have a LOD (Line of Duty) investigation. Sgt. Baker, by all evidence, was on his way to Ft. Lee, Virginia, when he disappeared.

In April of 2017, Plaintiff advised the Army that Sgt. Baker had threatened to kill himself.

Plaintiff sought help from the Army because of the threat of suicide. The Army did not respond to the request, which violated directives to investigate the threat.

All suicides and suspected suicides must be investigated. AR 600-63, AR 638-8, AR 600-92-8. The Army failed or refused to do so.

Army Directive 2010-01 also directs the Army to investigate suspected suicides.

If Sgt. Baker did commit suicide, or attempted to do so, as argued by the Army, as implied by its ruling, he cannot legally be held responsible, as shown below.

The Army further argued that Sgt. Baker's son was packing to go home.

The son had to pack and leave because he and his mother could not make payments, thus requiring him to quit his job. (Plaintiff later lost the house through bankruptcy because she could not make the payments.)

Sgt. Baker's son gave an affidavit stating that his father left for duty as he did every day, wearing his uniform, but taking nothing else.

It is arbitrary and an injustice for the Army to use the actions of Sgt. Bakers' son as evidence of Sgt. Baker's administrative AWOL, desertion, or intent to desert.

The action of the son in this matter is not evidence of Baker's alleged AWOL or desertion.

There is no evidence to show Baker committed suicide or attempted to commit suicide.

As evidenced by the ruling of the ABCMR, the Army has attempted to show evidence of AWOL and intent to desert by the use of Sgt. Baker's statement regarding thoughts or threats of suicide.

The Unit Commander's report of inquiry/unauthorized absence listed <u>possible contributing factors</u> causing AWOL and Desertion were marital strife and mental disorder with mental instability. (See Letter of decision of ABCMR (Paragraph 4 (sub paragraph (S) Page 6-7.)  No LOD investigation was ever made into these "possible" reasons for desertion.

The possible contributing factors listed by the Commander are his conclusions. There is a declaration of death entered by a Judge in Banks County, GA on  The declaration of death was not opposed by the Army.

The statements by Baker of committing suicide clearly cannot be used to show intent to desert. Army Regulation 600-8-4, Line of Duty Policy, Procedures and Investigations, paragraph 4, states, "Suicide or Attempted Suicide, (a) Suicide refers to a death resulting from purposeful action to result in one's own death. In order for suicide to constitute misconduct, the act of misconduct must be intentional. A soldier who is not mentally sound is incapable of forming intent, which is an essential element of intentional misconduct.

b. Due to the human instinct for self-preservation, suicide and bona fide suicide

attempts create a rebuttable presumption that a Soldier who committed or attempted suicide lacked mental responsibility and was unable to comprehend the nature of or to control his or her actions. A failure to rebut this presumption will support a finding of it."

Paragraph 4-11 General rule regarding mental responsibility reads, "A soldier may not be held responsible for his or her acts and their foreseeable consequences if, at the time of commissions of such acts, as the result of mental defect or disability, the soldier was unable to comprehend the nature of such acts or to control his or her actions. That is, if the Soldier does not have ability to form the intent to undertake the underlying conduct, then the Soldier is mentally unsound and therefore not mentally responsible, for the purpose of LOD investigations.

Paragraph 4-12, "Suicide or Attempted Suicide.

a. Suicide refers to a death resulting from purposeful action to result in one's own death. In order for suicide to constitute misconduct, the act of self-destruction must be intentional. A Soldier who is not mentally sound is incapable of forming intent, which is an essential element of intentional misconduct."

The Army unit commander used a threat of suicide to prove intent to desert and justification to claim AWOL and administrative desertion.

The unit commander stated clearly that the only justification for awol and desertion was "marital strife, and possible mental instability and mental disorder.

If mental instability and mental disorder were involved, then Sgt. Baker was incapable of forming intent.

The ABCMR decision is arbitrary, capricious, unsupported by evidence and is contrary to law.

c. In the event of a suicide or attempted suicide the mental health provider must identify, evaluate and document mental and emotional disorder.

No evaluation of this matter by a mental health provider was ever made.

Any use or attempt to use suicide or the threat to commit suicide is arbitrary and capricious, unsupported by evidence and is contrary to law and the army's own rules.

Plaintiff and Baker were married for twenty-plus years, and had never been separated or divorced. (See affidavit of Alice Mae Baker).

The affidavit given by the plaintiff states clearly that they were not separated. (See Affidavit of Mae Alice Baker.)

Nothing in the record shows an LOD investigation, which is required, nor a required investigation into the matter by qualified medical personnel.

Furthermore, although Baker talked about committing suicide, as reported by Plaintiff, this was never investigated by the army, as required by Army Directive 2010-01.

(Conduct of AR-15-6 Investigations into Suspected Suicides and Requirements for Suicide Incident Family Briefs).

The Army is required to make an investigation into any suicide or suspected suicide, and to brief the family of the investigation.

The Army failed to brief the family on any investigation into a suicide or attempt.

There is no admissible evidence of suicide or intent to commit suicide by Sgt. Baker, yet the Army used this conversation from Sgt. Baker to his wife as the total and only justification for a charge of AWOL and desertion.

Talking of suicide is not evidence of intent to desert. In fact, the army specifically states that suicide or threat of suicide shows inability to intend to desert. See Army Regulation 600-8-4.  Line of Duty Policy, Procedures and Investigations. Paragraph 4-11 and 4-12, as shown below.

Paragraph 4-11 General rule regarding mental responsibility reads, "A soldier may not be held responsible for his or her acts and their foreseeable consequences if, at the time of commissions of such acts, as the result of mental defect or disease, the Soldier was unable to comprehend the nature of such acts or to control his or her actions. That is, if the Soldier does not have ability to form the intent to undertake the underlying conduct, then the Soldier is mentally unsound and therefore not mentally responsible, for the purpose of LOD investigations."

While it is not necessary to prove intent to show AWOL, intent is required to show desertion.

There has been no evidence or proof of AWOL or desertion. Only a conclusion by the commander of possible causes of AWOL and desertion. This is not proof of intent, only conclusions of the Commander.

<u>Paragraph 4-12, "Suicide or Attempted Suicide</u>.

a.  Suicide refers to a death resulting from purposeful action to result in one's own death. In order for suicide to constitute misconduct, the act of self-destruction must be intentional. A Soldier who is not mentally sound is incapable of forming intent, which is an essential element of intentional misconduct.

The Army must prove intent to desert. However, the Army has used only the threat of suicide as intent to desert in order to charge Sgt. Baker with AWOL and administrative desertion.

The ABCMR decision is arbitrary, capricious, unsupported by evidence and is contrary to law.

## 2.

WHEN A DEPUTY OVERTURNS A DECISION OF AN ABCMR BOARD, HE OR SHE, IS REQUIRED TO STATE THE REASONS FOR HIS DECISION. 32 CFR Section 581.3Army Board for Correction of Military Records paragraph (g), Disposition of Applications, (3), by the Secretary of the Army, reads, in part, "If the Secretary does

not accept the ABCMR's recommendation, adopts a minority decision, or fashions an action that he or she deems proper and supported by the record, that decision will be in writing and will include a brief statement of the grounds for denial or revision."

Deputy Conyers stated only that he had "reviewed the record of proceeding and all supporting documents in the above case. Based upon the misconduct involved and the demonstrated intent of the applicant to remain away permanently, I am overturing the Board's recommendation and denying the requested relief".

Mr. Conyers makes no connection with suicide or attempt. Nothing in the record indicates misconduct or intent to remain away permanently.

"The requirement that the agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result." Public Citizen, Inc. v. FAA, 988 F.2d 186.

Dickson v. Secretary of Defense, United States Court of Appeals, Nos. 94-51`90, 94-5227. In sum, we find that the conclusory statements of the Board in these cases do not meet the requirements that "the agency adequately explain its result."

As shown above, in the original ABCMR decision, the entire Board granted full relief to Plaintiff, ruling that "2. Grant. There is enough evidence that FSM did not desert on or about the date of disappearance."

The Board determined "the evidence presented is sufficient to warrant a recommendation for relief. As a result, the Board recommends that all Department of the Army records of the individual concerned be corrected by:

    a.  Removing information from the FSM's record showing a dropped from the role status,

    b.  Showing that the FSM was in a non-pay status from 1 December 1988 through 12 August, 1989 and

    c.  Providing the applicant with an AHRC Form 1596 (Transcript of Military Record) in the absence of a copy of the actual separation document showing the FSM's character of service as honorable."

Deputy Assistant Secretary Conyers overturned the Board, stating "he had reviewed the record of proceeding and supporting document and based upon misconduct involved and the demonstrated intent of the applicant to remain away permanently, he was overturning the Board's recommendation and denying the requested relief."

There is no misconduct shown in this matter nor is there any intent to remain away permanently as alleged by the Army or Deputy Secretary of Defense.

In <u>Betts v. United States,</u> 145 CT. CL. 530,the Court ruled, "The first question before us is the naked one, whether a Secretary is free to reach a conclusion which is contrary to all of the evidence, is contrary to all the boards authorized by Congress to

assist the Secretary in his function of correcting records, and is some months after the decision, expressly based upon a purported reason which is utterly irrelevant.

A public officer, making decisions affecting the rights of citizens, is not free to act capriciously. A decision, contrary to all the evidence, and for which, even on post audit, no reason can be given, except an irrelevant reason, cannot be characterized as other than capricious."

The Deputy Secretary of Defense Conyers is required to state the reasons for reversing the ABCMR decision, but in this case, has presented nothing to show his reason for overruling the Board. The Deputy Secretary of Defense used the allegations stated for the ruling of AWOL and Desertion, but made no required connection.

32 CFR Section 581.3-Army Board for Correction of Military Records paragraph (g), Disposition of Applications, (3), by the Secretary of the Army, reads, in part, "If the Secretary does not accept the ABCMR's recommendation, adopts a minority decision, or fashions an action that he or she deems proper and supported by the record, that decision will be in writing and will include a brief statement of the grounds for denial or revision."

Deputy Conyers never gave any reason for overturning the decision, stating only that he had found misconduct and intent to remain away permanently. No incident of misconduct is shown in the record.

"When the ABCMR denies an application, it must issue a brief statement of the grounds for denial which shall include the reasons for the determination that relief should not be granted" Burkins v. United States, 865 F.Supp.

Deputy Conyers failed to obey any directives in this matter.

The ABCMR , through Deputy Conyer's reversal of the Board's original decision, has ignored the basic rules involving suicide or attempt.

The Army Commander based his decision on the suicide remarks alleging that the suicide threat formed the necessary intent to go AWOL and desert.

If that decision stands, then the Army is saying that Sgt. Baker either committed suicide or attempted to do so.

Accepting this argument overrides the clear rulings and directives ruling that a person who commits suicide or attempts to do so cannot act rationally.

In Wehner v. United States, 642 F.2d 404, the Court ruled "The fundamental issue in the instant case is, then, whether Plaintiff's absence from duty was beyond his control and not due to misconduct on his part. If this absence was beyond his control and not due to misconduct on his part, the Army was required under 37 U.S.C.  section 503(a) to excuse it. Failure to excuse the absence under such circumstances would constitute an abuse of discretion."

__Wehner__, states further, "Specifically we find that (i) the decision of the ABCMR is inadequate because there is no satisfactory indication that the ABCMR based its decision on a balance of consideration of all the evidence presented and available to it, (ii), even assuming that the ABCMR considered all the evidence in reaching its decision, there does not exist substantial evidence to support its decision."

The Army rules laid out in LOD clearly show that the Army cannot use suicide or attempt of suicide for misconduct.

AR 600-8-4, B-10 Rule 10, reads in part, "Suicide is the deliberate and intentional destruction of one's own life. The law presumes that a mentally sound person will not take his own life (or make a bona fide attempt to commit suicide) This presumption prevails until overcome by substantial evidence and a greater weight of the evidence than supports any other conclusion. __Evidence that merely establishes the possibility of suicide, or merely raises a suspicion of death due to suicide, is not enough to overcome in line of duty presumption.__"

The use of purported threat of suicide used to show AWOL or desertion as used by the army in this case is an injustice and is obviously capricious and an error of law.

No statements or evidence shows intent to desert. No statements from any fellow soldiers of hearing Baker threat to desert, or statements of

family of ever hearing Baker show intent to desert. In fact, Sgt. Baker himself would not report problems to the Army because he felt they may kick him out.

With the exception of a minor infraction by Sgt. Baker, (discourteous gesture toward a superior), no disciplinary action was ever taken by the army during Sgt. Baker's army career. Baker, in twenty plus years service, was never late or absent from duty. Baker had a security clearance that was revoked only after he was administratively found AWOL and declared a deserter.

No evidence to desert has been shown by the Army. No intent to desert shown by others, no overheard threats to desert, no carrying away of personal items. The Army has used only a threat of suicide as intent to desert.

There is no evidence of suicide by Sgt. Baker. There is no admissible evidence of intent to commit suicide. There is no proof of desertion. Baker was never late for duty.

He had a security clearance. No disciplinary action against Baker ever occurred, except for the minor infraction shown. He had numerous commendations on record. He could have retired at any time.

Threats of suicide as shown only by what was said to Plaintiff is hearsay and is inadmissible as a matter of law.

The Army admits the presumption of death, and used the presumption of death to carry Baker as returned to army control.

The Army has placed a stigma on the record of Sgt. Baker, which should not be allowed on the evidence (or lack thereof), used by the Army.

Is the army alleging suicide or attempt, or are they alleging that Sgt. Baker is still alive?

In <u>Midgett v. United States</u>, 603 F2d 835, the Court stated, " ……the Board had before it a legal presumption of death from a civil court. And even if we do not fight the "battle of presumption", the legal presumption of death has precedence over the administrative presumption of continued life, we find the decision of the ABCMR to be arbitrary and capricious. Its decision to affirm the conclusion of Midgett's unit commander was not supported by substantial evidence; indeed the evidence before the board was sufficient to warrant the changes requested by the Midgetts."

Further, in Midgett, the Court of Claims noted that the regulation under which Pvt. Midgett was classified as a deserter did not require an intent to desert, the classification was merely an administrative convenience which required a unit to drop a person from its roles after 29 consecutive days of unexplained absence. The Court found that "that the initial determination, "absent without leave" and "desertion" was based on nothing more than administrative conclusion for the convenience of the army.

In <u>Midgett,</u> the Court ruled that Midgett's record further showed lack of intent for the ruling of desertion.

In the case at bar, the determination was further based upon a threat of possible suicide attempt which, as used by the Army, showed mental unbalance. The Army has clearly stated this cannot be used against the soldier.

The Army clearly has no evidence to use as support for the ruling of AWOL/Desertion, instead, the entire ruling was made for convenience to the military.

In fact, the Commander listed as the reason to charge Sgt. Baker as AWOL or as a deserter was "possible marital strife and mental disorder with mental instability."

This ruling clearly shows a total lack of evidence, and that the charges are based on an opinion of the commander. (Letter from ABCMR)

The Army now has a policy of no automatic AWOL or deserter status after 30 days missing and directs that the soldier be declared "missing." Army Directive 2020-16. (Determination and Reporting of Missing, Absent-Unknown, Absent without Leave and duty status-whereabouts unknown.) This policy went into effect in December of 2020, prior to the April 2021 ruling by the deputy Secretary of Defense. The ABCMR never considered or followed DoD directive 2020-16.

A DOD directive is a broad policy containing what is required by legislation, the President, or the Secretary of Defense to initiate, govern, or regulate actions or conduct by the DoD components within their specific areas of responsibility. DoD directives establish or describe policy, programs, and organizations; define missions, provide authority and assign responsibilities.

The original ruling by the Army Investigative Unit in 1989 clearly was before the current directive. However, the final ruling by the ABCMR was not, and the ABCMR Is required to obey the directives of the army. The ABCMR made its ruling totally disregarding the directive of December 2020. This is clearly an error of law.

Sanders v. United States, 594 F2d 811, "Plaintiff is entitled to an examination of the validity of the subject determination under the standard of review articulated in the cases just cited. We must carefully review the evidence before the ABCMR."

### 3.

### ABCMR Ruling

THE ABCMR MADE THE FINAL DECISION ON APRIL 27,2021, RULING THAT THE ABCMR HAD VOTED TO PROVIDE FULL RELIEF TO PLAINTIFF, HOWEVER, THAT THE DEPUTY ASSISTANT SECRETARY OF THE ARMY HAD OVERRULED THE BOARD. (ABCMR Letter of Evidence and Ruling).

In his ruling overturning the board, Deputy Conyers failed completely to explain his reason, stating only that he had found misconduct and intent to desert. This is improper and a failure to obey the below cited cases.

"The ABCMR may order the correction of the records of military personnel if the applicant proves the existence of an error or injustice by a preponderance of the evidence." AR-185. Wagner v. United States, No. 03-5118., and "We begin with the initial premise that an agency is bound by its own regulations."

The ABCMR, in its initial ruling by the three members of the Board ruled

in favor of Plaintiff. (See ABCMR letter dated April 27, 2021). This ruling by the ABCMR

was overruled by Deputy Director of Defense Conyers.

The final ruling by the Deputy Secretary of Defense is an error of law, an

injustice, and is not supported by the evidence in this matter.

**4.**

**THE ACTIONS, OR FAILURE TO ACT IN THIS CASE, SHOW THE RULING OF THE**

**ABCMR (BY SECRETARY CONYERS' REVERSAL) ARE ARBITRARY, CAPRICIOUS, AND A**

**ERROR OF LAW.**

An agency is required to "examine the relevant data and articulate a satisfactory

explanation for its action including a rational connection between the facts found and

the choice made." Motor Vehicle Mfrs. Ass'n of U.S. , Inc v. State Farm Mut. Auto Ins.

Co., 463 U.S.29 .

"Under the Administrative Procedure Act, a court must set aside agency action

if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law." 5 UI.S.C. section 706(2)(A).

In Dickson v. Secretary of Defense, Nos 94-5190, 94-5227, the Court ruled, "In

sum, we find that the conclusory statements of the Board in these cases do not meet

the requirement that "the agency adequately explain its results." Public Citizen, , 988

F.2d 197. Because the Board only listed the facts and stated its conclusions, but did not

connect them in any rational way, the Board's decisions are arbitrary and

capricious. Where an agency has failed to explain the path it has taken, we have no choice except to remand for a reasoned explanation." Citing, Tex Tin Corp v. EPA, 935 F. 2d 1321.

In Dickson, the Court further stated, "Having determined that the Board's decisions are reviewable, we now turn to the issue of whether the decisions here were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Because the Board failed to provide anything approaching a reasoned explanation for its decisions we hold that the waiver determinations were arbitrary and capricious"

"The requirement that Agency action not be arbitrary and capricious includes a requirement that the Agency adequately explain its result." Public Citizen Inc v FAA, 988 F 2d 186.

"The arbitrary and capricious standard of the APA "mandates that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision." Pension Benefit Guaranty Corp. v. LTV Corp., 496 U.S. 633, 110 S.Ct. 2668.

…. An agency's explanation must minimally contain a "rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass. v. State Farm Mutual  Ins. Co. 463 U.S. 29.

The Court in <u>Dickson</u> went on to say "….the panel would surely have had to address and distinguish the many Supreme Court cases  and D.C. Circuit cases requiring reasoned explanations from administrative agencies."

THE ARMY COMMANDER BASED HIS RULING ON "POSSIBLE CONTRIBUTING FACTORS CAUSING AWOL WERE MARITAL STRIFE WITH MENTAL DISORDER AND MENTAL DISABILITY.  THESE ARE OPINIONS OF THE COMMANDER, NOT FACTS. Plaintiff has an expert opinion, plus supporting military records, that Sgt. Baker had uncontrollable high blood pressure, which the Army could not control. Nurse Bridgefarmer made it clear that this condition made Sgt. Baker a high risk for an  aneurysm, heart attack, aortic dissection, memory loss, pulmonary edema, or transient ischemic attack (ministroke), among other disorders. The evidence given by the ABCMR is based on speculative opinion and conclusions of the commander and by irrelevant actions of Sgt. Baker's sixteen year old son. By the Army's own rules, no intent to desert can exist in this case; DoD 2020-16 has been erroneously ignored. This is error of law.

### SUMMATION

The army has failed to prove Baker has been AWOL or deserted. The charges were made for convenience to the army.

Additionally, the Army cannot prove AWOL/Desertion, or whether Sgt. Baker is alive. In fact the presumption of death provides a legal presumption as opposed to an administrative opinion.

Baker's entire record in the army has been exemplary. He has received many commendations during his career. He had been given a secret clearance.

The Army has argued that one of the reasons the charges were "possibly justified" was because Baker threatened suicide. The army did not and cannot show Sgt. Baker committed suicide. Even if the Army could show suicide, attempts or threats of suicide, Bakers threats of suicide shows lack of intent, and it would be an error of law to show intent to go AWOL, desert or other misconduct. The Army's only support for declaring Baker AWOL and as a deserter is based on inadmissible opinion evidence, errors of law, and no evidence of either AWOL or desertion, and show refusal by the Army to obey a DoD directive.

Several affidavits exist to support Sgt. Baker not deserting. There is no evidence of suicide or attempted suicide; no disobedience of Department of Defense directives by the Army; no evidence of statements to fellow soldiers of dissatisfaction or intent to desert; no preparation to desert, ie, taking of clothing or personal items upon disappearance, no prior AWOL or even late for duty; no purchase of tickets for distant flights, no disposing of uniforms or military equipment, no showing of dissatisfaction with the army, no showing to anyone of a desire to desert, for instance, statements

made to anyone, fellow soldiers, family members; no showing of enlistment in any other service; no personal or valuable property was taken when Sgt. Baker disappeared.

In the Manual for Courts Martial, Rule 706(A) states that "if it appears to any commander or preliminary investigator who considers the disposition of charges that there was reason to believe that the accused lacked mental responsibility that the information should be transmitted to the investigating officer."

In this case, the Commander states clearly his conclusion that Sgt. Baker lacked mental responsibility or mental disorder.

Nothing in the record shows an investigation by proper personnel, nor was the information of threats of suicide transmitted to investigative or medical personnel.

In fact, in this case. the commanding officer stated clearly that "possible" reasons for accused to desert was mental disorder and mental instability, and his opinion was used to charge Sgt. Baker with AWOL and Desertion.

To the contrary, Sgt. Baker had a long and excellent service record. He had a secret clearance and had numerous letters of commendations from his superiors.

If Sgt. Baker's actions amounted to mental disorder and mental instability, as stated by his commander, he would have been unable to form intent to desert.

By their own statements, the Army has argued the reasons for the charges of AWOL and Desertion were possibly caused by mental Instability, and mental disorder.

Therefore, the charges against SSGT Baker are arbitrary, abuse of discretion, capricious, contrary to law or mandatory procedures, and further amount to an injustice against SSgt Baker.

Plaintiff in this matter requests the following,

(1) The removal of the ruling of AWOL and desertion from Sgt. Bakers' records;

(2) The death gratuity owing, plus interest;

(3) Final settlement of all amounts due a deceased member of the armed forces, Including insurance, and back pay;

(4) Any other such relief as deemed necessary and correct by this court.

This 5th day of April, 2024.

*Jack Dodd*

4151 Catawba Ridge
Gainesville, GA 30506
770 983-3600
State Bar No. 224075